UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REJOICE! COFFEE COMPANY, LLC.,<br><br>Plaintiff,<br><br>v.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC., et al.,<br><br>Defendants. | Case No. 20-cv-06789-EMC<br><br>**AMENDED ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 34 |

In this suit, Plaintiff Rejoice Coffee Company, LLC ("Rejoice"), on behalf of itself and all others similarly situated, has sued Sentinel Insurance Company, Ltd. (Sentinel"), and its parent company, The Hartford Financial Services Group, Inc. ("HFSG"), under California's Unfair Competition Law and for unjust enrichment/restitution. *See* First Amended Complaint ("FAC"), Docket No. 28. Rejoice contends that Sentinel was obligated to refund premiums or make adjustments warranted by the reduction in business operations caused by the COVID-19 pandemic. Defendants Sentinel and HFSG moved to dismiss Rejoice's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants take the position that Insurance Code Section 1860.1 grants exclusive jurisdiction to the Insurance Commissioner over ratemaking authority and that Rejoice's challenge herein essentially falls within the Commissioner's exclusive jurisdiction and thus is precluded from bringing this suit. *See* Mot. to Dismiss ("MTD"), Docket No. 26. The Court continued the matter to allow the California Insurance Commissioner an opportunity to opine on the question of exclusive jurisdiction. *See* Order, Docket No. 54. On September 17, 2021, the Insurance Commissioner submitted a brief pursuant to the Court's invitation. Ins. Comm. Brief ("Ins. Brief"), Docket No. 61. On October 8,

1    2021, Defendants and Rejoice filed supplemental briefing in response to the Insurance

2    Commissioner's brief.  *See* Docket Nos. 64 & 66.  In addition to Defendants' second motion to

3    dismiss, currently pending before the Court are Defendants' and Rejoice's requests for judicial

4    notice.  *See* Docket Nos. 35, 37, & 52.

5          For the following reasons, the Court **DENIES** Defendants' Motion to Dismiss.

6          **I.    FACTUAL AND PROCEDURAL BACKGROUND**

7          Rejoice's first amended complaint alleges as follows.

8          Defendant HFSG, through wholly owned and controlled subsidiary companies such as

9    Sentinel, provides commercial property and casualty insurance, insuring against the property and

10   business risks of California business operations and their commercial premises.  FAC ¶ 28, Docket

11   No. 28.

12         Prior to the COVID-19 pandemic, Rejoice sold coffee to large employers throughout the

13   Bay Area, wholesale coffee to others for resale, and operated two coffee shops located in large

14   office building amenity spaces catered to building tenants and their guests.  *Id*. ¶ 26.  Rejoice

15   purchased business risk insurance from Sentinel to insure its various commercial properties and

16   business operations on their commercial properties before the onset of the COVID-19 pandemic.

17   *Id*. ¶ 32.

18         Rejoice's insured operations, like many others, have been substantially reduced, and its

19   premises closed by the COVID-19 pandemic and associated government mandates and guidelines.

20   *Id*. ¶ 26.  As a result, the pandemic has also substantially reduced the exposure to risk insured

21   under Rejoice's insurance policy.  *Id*. ¶ 36.  Defendants became aware of the effect of the

22   pandemic on insureds on April 13, 2020, when the California Insurance Commissioner issued a

23   bulletin acknowledging that "projected loss exposures of many insurance policies have become

24   overstated or misclassified" and ordered "insurers to make an initial premium refund for the

25   months of March and April to all adversely impacted California policyholders" in certain lines of

26   insurance.  Pl.'s Req. for Judicial Notice ("Pl.'s RJN"), Exh. A, Insurance Bulletin 2020-3, p. 1,

27   Docket No. 37.  Rejoice alleges that Defendants' practice of "collecting premiums that were

28   established without regard to whether the pandemic has closed or substantially reduced a

United States District Court
Northern District of California

policyholder's business operations or use of business premises" is unfair and violates California public policy. FAC ¶ 39.

Rejoice alleges that California has a long-standing general public policy limiting insurance premiums to a fair rate of return for the insurance carriers to an amount (1) commensurate with returns on investments in other enterprises having corresponding risks; and (2) sufficient to attract capital and maintain credit. *Id*. ¶ 34 (citing 10 Cal. Code 24 Reg. § 2644.16)). Rejoice also cites Proposition 103, which was passed to "protect consumers from arbitrary insurance . . . practices, to encourage a competitive insurance marketplace . . . and to ensure that insurance is fair, available, and affordable for all Californians." *Id*. ¶ 35.

Based on the above allegations, Rejoice brought two causes of action. First, Rejoice alleges that Defendants' collection and retention of insurance premiums without an adjustment or refund violate California Business and Professions Code § 17200, *et seq.*, also known as California's Unfair Competition Law ("UCL"). *Id*. ¶¶ 51-59. Additionally, Rejoice has brought an unjust enrichment claim based on the same underlying conduct. *Id*. ¶¶ 60-65. Essentially, Rejoice alleges that Defendants should have adjusted premiums in light of business reductions and closures caused by the COVID-19 pandemic and that their continued collection of excessive premiums, in addition to their retention of the excessive premiums, violated the UCL and resulted in Defendants' unjust enrichment.

## II.     DISCUSSION

A.     Legal Standard

1.     Rule 12(b)(1)

Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The "irreducible constitutional minimum" of standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins* ("*Spokeo II*"), 136 S. Ct. 1540, 1547 (2016). These three elements are referred to as, respectively, injury-in-fact, causation,

3

and redressability. *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "clearly . . . alleg[ing] facts demonstrating each element." *Spokeo II,* 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

A Rule 12(b)(1) jurisdictional attack may be factual or facial. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack," "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1038. In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

Either way, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth*, 422 U.S. at 501; *see also Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001) (in assessing standing, the court may consider "the complaint and any other particularized allegations of fact in affidavits or in amendments to the complaint").

2. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R.

4

Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

B.  <u>Exclusive Jurisdiction Pursuant to California Insurance Code § 1860.1</u>

Defendants contend that Insurance Code § 1860.1 establishes exclusive original jurisdiction to the Insurance Commissioner over Rejoice's claims.[1]  MTD 11:21–23.  Section 1860.1 states as follows:

> No act done, action taken or agreement made pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution or civil proceedings under any other law of this State heretofore or hereafter enacted which does not specifically refer to insurance.

Cal. Ins. Code. § 1860.1.  However, Insurance Code § 1861.03, enacted after § 1860.1 by Proposition 103, explicitly makes the business of insurance subject to California laws applicable

---

[1] Defendant's subject matter jurisdiction challenge is a 12(b)(1) facial attack.  MTD 11:24 ("The impermissible nature of Rejoice's suit is apparent on the face of its Amended Complaint."); *see Safe Air for Everyone*, 373 F.3d at 1039 ("[i]n a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.").  The Court will accept Rejoice's allegations as true and draw all reasonable inferences in their favor.  *See Leite*, 749 F.3d at 1121.

5

to any other businesses. It states, in pertinent part:

> The business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to, civil rights laws (Sections 51 to 53, inclusive, of the Civil Code), and the antitrust and unfair business practices laws (Parts 2 (commencing with Section 16600) and 3 (commencing with Section 17500) of Division 7 of the Business and Professions Code).

Cal. Ins. Code. § 1861.03(a). Despite the apparent conflict between the provisions, Proposition 103 did not repeal § 1860.1 or other related immunity provisions in the Insurance Code. *See e.g.* Cal. Ins. Code, §§ 795.7, 12414.26, 11758. In analyzing the relationship between various provisions in the Insurance Code, courts have looked to the legislative histories of these provisions to harmonize their meanings. *See Villanueva v. Fid. Nat'l Title Co.*, 11 Cal. 5th 104 (2021) (analyzing the scope of immunity afforded by § 12414.26); *see also MacKay v. Superior Ct.*, 188 Cal. App. 4th 1427, 1444–47 (2010) (analyzing the scope of immunity by afforded § 1860.1).

Section 1860.1 was enacted in 1947, in the wake of a Supreme Court decision holding that insurance was subject to federal antitrust law. It was enacted as part of the McBride-Grunsky Act "in order to immunize insurers from antitrust laws." *MacKay,* 188 Cal. App. 4th at 1444. The McBride-Grunsky Act included a provision "permitting insurers to act in concert." *Id*. at 1445. In 1988, California voters passed Proposition 103, which "was intended to eliminate insurers' exemption from antitrust laws." *Id*. at 1447. Proposition 103 repealed the portion of the McBride-Grunsky Act "permitting insurers to act in concert"; however, the Proposition did not repeal the entirety of § 1860.1. *Id*. at 1445-46. The *MacKay* court concluded that § 1860.1 should be read narrowly, "exempting from other California laws acts done and actions taken pursuant to the ratemaking authority conferred by the ratemaking chapter, *including the charging of a preapproved rate*." *Id*. at 1443 (emphasis in original). *MacKay* stressed, however, that § 1860.1 "does not extend to insurer conduct not taken pursuant to that authority." *Id.* at 1449. The California Supreme Court, in its analysis of a different parallel statute in *Villanueva*, similarly recognized that "§ 1860.1 'does not exempt all acts done 'pursuant to' the chapter — which is to say, all ratemaking acts — but instead exempts acts done 'pursuant to the authority conferred by this chapter.'" *Villanueva*, 11 Cal. 5th at 117, (quoting *MacKay*, 188 Cal. App. 4th at 144).

6

1	The question presented here is what constitutes conduct done pursuant to the authority conferred by the ratemaking chapter. In this regard, courts have distinguished between (1) challenges to approved rates and rating factors, which is conduct done pursuant to the authority conferred by the chapter and (2) challenges to the *application* of approved rates, which is not. *See Walker v. Allstate Indem. Co.*, 77 Cal. App. 4th 750 (2000) (holding § 1860.1 immunity continues to bar challenges to ratemaking decisions under the UCL and tort claims in the wake of Proposition 103); *Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968 (2004) (distinguishing *Walker* to hold that a challenge to an insurer's "rating factors and class plan, *as applied*, violated [other provisions of] Proposition 103" are viable and not subject § 1860.1 immunity) (emphasis in original); *MacKay*, 188 Cal. App. 4th 1427 (holding § 1860.1 bars claim under UCL to challenge insurer's use, not the application, of approved rating factor).

Thus, a challenge to the insurance rate itself (*i.e.*, a facial challenge) is barred by § 1860.1 as that section confers exclusive original jurisdiction with the Insurance Commissioner. *Krumme v. Mercury Ins. Co.*, 123 Cal. App. 4th 924, 936 (2004). However, an as-applied challenge is not so immunized. *MacKay*, 188 Cal. App. 4th at 1450. The dispute over subject matter jurisdiction in the instant case turns upon this distinction.

Defendants argue that Rejoice's claims are "straightforward challenges" to approved rates and barred under § 1860.1. MTD 11–12. Rejoice, on the other hand, alleges in the amended complaint and asserts in its opposition brief that their "challenge to Sentinel's unfair application of its approved rate plan clearly involves insurer conduct *not* taken pursuant to the authority of the ratemaking chapter, and thus not subject to the Commissioner's exclusive jurisdiction." Opp'n at 14:7-9, Docket No. 36 (emphasis in original); *see also* FAC ¶ 9 ("This lawsuit seeks recovery of those excessive and/or unfair premiums, and is not a challenge to the approved rates, the ratemaking process, or the established fair rate of return."). Both parties cite *Walker* and *MacKay* in support of their positions.

In *Walker*, the plaintiffs challenged the rate making process directly, basing their claims, in part, on the Insurance Commissioner's failure to adopt certain "generic factors" that the plaintiffs argued were required under the applicable regulations. *See Walker*, 77 Cal. App. 4th at 752-53.

7

*Walker* held that the Commissioner had exclusive jurisdiction over the plaintiffs' claims under § 1860.1. *Id*. at 756. Notably, the claims directly concerned the rates approved by the Commissioner. In *MacKay*, the plaintiffs alleged the defendant insurer's use of "accident verification" as a rating factor violated the Insurance Code. *MacKay*, 188 Cal. App. 4th at 1432. The *MacKay* court found that the defendant's use of accident verification was a rating factor approved by the Department of Insurance and the Insurance Commissioner, and therefore, under the Commissioner's exclusive jurisdiction. *Id*. at 1437-48. However, that court recognized that "'[i]t is possible for an insurance carrier to file with the [DOI] a rate filing and class plan that [satisfies] all of the ratemaking components of the regulations, and still result in a violation of the Insurance Code *as applied*. Such a [situation] would not involve a question of rates, but rather, it could easily involve the very separate, factual question of how the components of the class plan are applied toward members of the public.'" *Id*. at 1450 (quoting *Donabedian*, 116 Cal. App. 4th at 993) (emphasis in original).

Rejoice's claims are distinguishable from those in *Walker* and *MacKay* because its claims do not challenge either rates or rating factors approved by the Insurance Commissioner. *Cf. Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012) ("[j]ust because the damages are based on increased costs incurred as a result of the alleged kickback scheme does not transform a challenge to conduct and practices into a challenge to the premiums."). The plaintiffs in *Walker* and *MacKay* were directly challenging the ratemaking process, alleging that the rates approved by the Insurance Commissioner were excessive per se. *See Wahl v. Am. Sec. Ins. Co.*, No. C 08-0555 RS, 2010 WL 4509814, at *3 (N.D. Cal. Nov. 1, 2010) ("*MacKay*, *Walker* and the various other cases on which [the defendant] relies for its McBride Act 'defense,' as it were, were limited to situations where a plaintiff challenged a charged rate as excessive per se, and effectively asked the Court to calculate an alternative rate it deemed more 'fair.'").

In contrast, Rejoice does not challenge rates approved by the Insurance Commissioner for the circumstances presented. The approved rates Defendants utilize for commercial property and casualty insurance are based on various factors, including the volume and type of business, the number of customers that frequent the business, the type of work employees conduct at the

premises, and the character of adjacent businesses and premises. FAC ¶ 29. Rejoice does not challenge these factors, but the application of the factors in the context of the COVID-19 pandemic. Because the pandemic substantially diminished, *e.g.*, the volume of business, the number of customers and character of adjacent businesses and premises, Rejoice contends that the "[t]he risk against which the defendants [] provided insurance was radically reduced" and as such, Defendants collected and/or retained premiums in excess of a fair rate of return. *Id*. ¶¶ 2, 11. Thus, Rejoice seeks "reimbursement of excessive and/or unfair premiums through disgorgement, restitution and or constructive trust, and to enjoin The Hartford from continuing to collect and retain such excessive and/or unfair premiums." *Id*. ¶ 42. Rejoice does not allege that Defendants' rates were excessive per se or that Defendants' use of an approved rate factor violates the law. Instead, Rejoice argues that due to the COVID-19 pandemic, Defendants' practice of "collecting premiums that were established without regard to whether the pandemic has closed or substantially reduced a policyholder's business operations or use of business premises." *Id*. ¶ 39. In short, Rejoice's challenge is to the *application* of approved rates/the rate plan, not the plan itself. It does not challenge action authorized by the Insurance Commissioner.

Notably, the Insurance Commissioner's brief opines that a suit challenging "an insurer's refusal to adjust its insurance premiums to account for the changed circumstances posed by the COVID-19 pandemic does not implicate California Insurance Code section 1860.1." Ins. Brief at 2. The Commissioner's brief explains that immunity pursuant to section 1860.1 "is only available when two things are both present:" (1) "the insurer's activity must be affirmatively authorized by the relevant ratemaking statutes," and (2) "there must be concerted action by two or more insurers." *Id*. The Commissioner notes that neither is present here. *Id*. Moreover, "section 1860.1 extends immunity only to actions or agreements made by insurers that are affirmatively authorized under chapter 9."[2] *Id*. at 3. The brief explains that "if chapter 9 does not authorize the action complained about in a civil action against an insurer, immunity under section 1860.1 will not be available to the insurer and such action is not subject to the Commissioner's exclusive

---

[2] Chapter 9 refers to part 1, division 2, chapter 9 (sections 1850.4 through 1861.16) of the California Insurance Code.

jurisdiction." *Id*. As noted in the aforementioned cases, the brief emphasizes that the immunity provision does not extend to every action related to ratemaking. *See id*. As such, "insurers could take action that, though indirectly related to ratemaking, is not authorized under chapter 9." *Id*. at 4. Additionally, the "incorrect application of an approved rate or rating plan is neither approved by the Commissioner nor authorized by the applicable ratemaking statutes." *Id*. Thus, an insurer's rate filing and rating plan filed with the DOI may satisfy the applicable ratemaking statutes and regulations; however, "the rate and rating plan as applied to a policyholder's situation could result in a legal violation actionable under the UCL." *Id*. The Commissioner explicitly notes that "chapter 9 does not authorize excessive premiums, unfair practices, or the misapplication of approved rates" and therefore, "immunity under section 1860.1 does not apply to claims against such unauthorized conduct." *Id*.[3]

Additionally, the Insurance Commissioner has acknowledged in a series of bulletins that projected loss exposures of many insurance policies have become overstated or misclassified as a result of the COVID-19 pandemic. *See* Pl.'s RJN, Exh. A–C, Docket No. 37; Pl.'s RJN, Exh. A, Docket No. 52. Rejoice has relied on these bulletins in its amended complaint to show insurance carriers have been put on notice of the adverse effect of the COVID-19 pandemic on policyholders. *See* FAC ¶ 24. For example, the first bulletin issued on April 13, 2020 (Bulletin 2020-3) allows insurers to reclassify exposure categories to comport with current risk exposure or to reduce the exposure base to reflect actual or anticipated exposure, without prior approval by the DOI, if done "consistent with the insurer's existing rating plan." Pl.'s RJN, Exh. A. Notably, the Commissioner opines that these bulletins:

> do not affect the question of whether a civil challenge to an insurer's refusal to reduce premiums in view of the pandemic is precluded by section 1860.1. Through the bulletins, the Commissioner directed insurers to make appropriate premium refunds to California policyholders in several lines of insurance [ . . . ] and is actively evaluating whether the insurance industry has issued sufficient refunds . . . .

---

[3] The Insurance Commissioner's brief further opines that section 1860.1 immunity applies only when antitrust conduct is involved. Ins. Brief at 5. However, this Court need not address this issue.

Ins. Brief at 2. Further, the Commissioner's brief states that the "immunity under section 1860.1 does not extend to allegations such as failure to lower excessive premiums or misapplication of an approved rate." *Id.* at 3. Notably, in *Villanueva*, the California Supreme Court held that the Insurance Commissioner's interpretation of a statute that provided immunity for acts done pursuant to the authority conferred by the rate-filing statutes (§ 12414.26) was, "like interpretative rules generally, due weight and respect insofar as contextual factors suggest[ed] that interpretation rest[ed] on institutional expertise giving the Commissioner a comparative interpretive advantage and that the interpretation is probably correct." *Villanueva*, 11 Cal. 5th at 122 (internal quotation marks and citation omitted).

Notably, giving weight to Commissioner's views outlined in the brief this Court requested, Judge William Orrick recently held in *Boobuli's LLC, v. State Farm Fire and Casualty Company, et al.*, Case No. 20-cv-07074-WHO, that State Farm's exclusive jurisdiction argument failed because the plaintiff was "not seeking to challenge the rate itself, but the misapplication of the rate in light of changed circumstances given the COVID-19 pandemic." Pl.'s Statement of Recent Decision, Exh. A, Order Denying Mot. to Dismiss at 16; Docket No. 67-1. Additionally, Judge Orrick found that if the Commissioner does act "with respect to State Farm's reduction or refunds," that action "may impact relief plaintiff or similarly situated policy holders might be able to receive from State Farm . . . [b]ut the scope of relief is premature to consider at this juncture." *Id.* at 18.

Accordingly, § 1860.1 does not preclude this Court from exercising subject matter jurisdiction. *See King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 936 (N.D. Cal. 2015) (denying Defendant's motion to dismiss because "Plaintiffs do not challenge the reasonableness of any particular insurance rate, nor do they attack acts done pursuant to the DOI's rate-making authority. Instead, Plaintiffs challenge Defendants' allegedly wrongful application of the approved rates . . . Thus, neither Section 1860.1 nor the filed rate doctrine precludes Plaintiffs from litigating their claims in this court"). Rejoice has alleged plausible claims challenging Defendants' *application* of the approved rates/rate plan. Defendants' motion to dismiss based on the Commissioner's exclusive jurisdiction is **DENIED**.

11

C. UCL Claim

California's UCL's prohibition against unlawful practices "'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143, (2003) (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180, (1999)). *Cf. Davis v. HSBC Bank*, 691 F.3d 1152, 1168 (9th Cir. 2012) ("[t]o be unlawful under the UCL, the advertisements must violate another borrowed law" and virtually "any state, federal or local law can serve as the predicate for an action under section 17200") (internal quotation marks omitted). However, a practice may also be deemed "unfair" by the UCL "even if not specifically proscribed by some other law." *Korea Supply Co.*, 29 Cal. 4th at 1143.

Courts have offered three distinct definitions of "unfair" conduct toward consumers:

> (1) whether the challenged conduct is "tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law,"; (2) whether the practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,"; or (3) whether the practice's impact on the victim outweighs "the reasons, justifications and motives of the alleged wrongdoer."

*Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (internal citations omitted).

Rejoice's allegations state a claim under formulation of the unfair prong of the UCL. Rejoice specifically supports its claim by comparing the harm suffered by businesses during the COVID-19 pandemic with the profits made by Defendants as well as citing California laws and regulations establishing a policy that limits insurance premiums to a fair rate of return. *See* FAC ¶¶ 22-23 ("[a]ccording to United States Congressional findings . . . approximately 43% of businesses had closed, and nearly all these closures were due to COVID-19"); ¶ 35("[i]n 1988, California voters approved Proposition 103, to further establish the public policy of the state and to 'protect consumers from arbitrary insurance . . . practices, to encourage a competitive insurance marketplace . . . and to ensure that insurance is fair, available, and affordable for all Californians.' The people of the state declared with Proposition [103] that . . . 'This [law] shall be liberally construed and applied in order to fully promote its underlying purposes . . .'"); ¶ 38 ("The

12

Hartford subsidiary through which it issued the relevant policy in California, reported that its Second Quarter "net underwriting gain" increased nearly 90 percent (90%) from the first half of 2019"). These allegations describe a practice which is substantially injurious to business owners in California, who are being charged the same premiums despite widespread business closures caused by the COVID-19 pandemic and the resulting decrease in risk while insurers obtained a windfall by collection premiums that outsized the actuarial risk insured. *Cf. Doe*, 982 F.3d at 1214-15 (affirming the district court's dismissal as to the plaintiffs' UCL claim since the plaintiffs failed to allege facts demonstrating how the defendant violated a federal regulation, leaving the district court to guess what conduct satisfied the unfair prong of the UCL).

Defendants argue that Rejoice's UCL claim is not plausible because Sentinel cannot offend public policy by charging rates submitted to and approved by the Insurance Commissioner. MTD 16:15-18. However, as explained above, approval of a given rate by the Commissioner does not necessarily foreclose the possibility that the approved rate can be improperly applied. *See MacKay*, 188 Cal. App. 4th at 1450; *Donabedian*, 116 Cal. App. 4th at 993. As noted above, Rejoice does not challenge action specifically authorized by the Commission and thus the challenged conduct is not insulated from review herein. Rejoice's claim of the unfair application of rates raises factual questions not properly resolvable at this juncture. *See Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007) ("[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer."); *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1164 (2018) (same).

Additionally, Defendants contend that Rejoice cannot state a claim for unfairly excessive premiums because the insurance policy provides Defendant the means to adjust the premiums based on an audit provision that allows for an audit at the policy period's conclusion, and thus Defendants have not been given an opportunity to make adjustments which could moot Rejoice's claims. MTD at 13-15. However, it appears that Defendants have made no attempt to adjust the premiums even though Section D of the policy provides that an examination and audit can occur "at any time during the policy period and up to three years afterward." Defs.' Req. for Judicial

13

1   Notice ("Defs.' RJN") Exh. C at 30, Docket No. 35-4.  Section I provides that premiums can be

2   readjusted *during* the policy period "in accordance with our rates and rules then in effect."  *Id*.

3   Defendants have done nothing to afford Rejoice relief.  Rejoice need not further await action by

4   Defendant to bring suit.

5         In any event, even though Rejoice's policy includes both property and business liability

6   coverage for a single premium, it appears that only the business liability coverage is subject to the

7   audit provision (not the property liability portion of the premium).  MTD at 4 n. 3; *see* Def.

8   Exhibit C at 12-21.  As such, any prospective audit would not address the entirety of the excessive

9   premium associated with Rejoice's policy.  Thus, the terms of Defendants' insurance policy do not

10  appear to preclude Rejoice's ability to plausibly allege a timely claim under the unfairness prong

11  of the UCL for Defendants' continued collection and failure to return premiums in excess of a fair

12  rate of return.

13        For the reasons noted above, Rejoice has stated a plausible claim under the UCL.  As such,

14  the Court **DENIES** Defendants' motion to dismiss the UCL claim.

15  D.   <u>Unjust Enrichment Claim</u>

16        The term "unjust enrichment," which is synonymous with "restitution," describes a theory

17  "underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud,

18  coercion, or request."  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

19        As noted above, Rejoice alleges that Defendants' continued collection and retention of

20  excessive premiums violated the UCL and resulted in their unjust enrichment.  Rejoice specifically

21  alleges that HFSG was unjustly enriched because "Sentinel, beholden to and controlled by its

22  parent corporation, turned over all or some of the premiums collected from [Rejoice] and Class

23  members to [HFSG]" such that those premiums "are held, possessed, controlled by, in custody of,

24  accounted for on the records and books of, or otherwise owned by [HFSG]."  FAC ¶ 63.

25        Defendants specifically contend that the Court should dismiss Rejoice's unjust enrichment

26  claim because the premiums Rejoice paid are covered by an undisputed insurance contract.  MTD

27  17:14–17 (citing *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 908 (N.D. Cal. 2011) (unjust

28  enrichment "does not lie when an enforceable, binding agreement exists defining the rights of the

14

parties." (quoting *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir.1996)). Further, Defendants argue that Rejoice fails to state a claim against HFSG because Rejoice cannot allege a sufficient relationship between itself and HFSG. Since HFSG is not a party to the contract between Rejoice and Sentinel, Defendants argue that "Rejoice does not allege any relationship with HFSG." MTD 18-19 (citing to *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 685 (9th Cir. 2009) (holding "[t]he lack of any prior relationship between Plaintiffs and [defendant] precludes the application of an unjust enrichment theory here.")).

To the extent that Defendants may be asserting that there is no standalone cause of action for unjust enrichment, that argument is not convincing. *See Astiana*, 783 F.3d at 762 (courts may construe an unjust enrichment claim as a quasi-contract claim seeking restitution).

As for Defendants' argument that Rejoice's unjust enrichment claim "does not lie when an enforceable, binding agreement exists defining the rights of the parties," citing *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996), this argument was rejected in *United States ex rel. Begole v. Trenkle*, 2010 WL 11596170, at *11–12 (C.D. Cal. July 16, 2010). In *Trenkle*, where the defendant similarly relied on *Paracor* to argue that an unjust enrichment claim must be dismissed at the pleadings stage. The court found that the defendant' reliance on *Paracor* was misplaced because "[i]n *Paracor*, the court reviewed whether an unjust enrichment claim could be maintained when a summary judgment adjudication determined an enforceable contract existed between the parties." *Id.* at *11. Notably, the plaintiff "allege[d] a contract existed between the parties, but since the case [was] still in the initial pleading stage, there [had] been no finding that a contract exists." *Id.* The court concluded that since "there *may not be an enforceable contract between Plaintiff and Defendants*, *Paracor* does not apply, and Plaintiff can maintain her unjust enrichment claim." *Id*. (emphasis added). Additionally, the court found that "Defendants' interpretation of *Paracor* effectively eliminates alternative pleadings under Federal Rule of Civil Procedure 8(d)(2) and inconsistent pleadings under Rule 8(d)(3)." The court emphasized that "[u]nder Federal Rule of Civil Procedure 8(d)(2), parties are permitted to plead alternative and hypothetical theories of a claim" and noted that in light of the liberal pleading policy embodied in Rule 8(d)(2), "the Ninth Circuit has held that at the initial pleading state 'a

1  pleading should not be construed as an admission against another alternative or inconsistent
2  pleading in the same case.'" *Id.* (citation omitted).
3        Relying on *Trenkle,* Judge Orrick also rejected the argument that an unjust enrichment
4  claim does not lie when there is a contract between the parties. *Boobuli's LLC, v. State Farm Fire*
5  *and Casualty Company, et al.*, Case No. 20-cv-07074-WHO.  In *Boobuli's LLC,* the defendant
6  cited *Paracor* to support its argument that the plaintiff's unjust enrichment claim was not viable
7  since there was an enforceable contract between the parties.  Judge Orrick also noted that the
8  defendant's interpretation of *Paracor* ignored the availability of alternative and inconsistent
9  pleadings under Federal Rule of Civil Procedure 8(d)(2) and (d)(3).  The court concluded that
10 dismissal was not warranted at the pleadings stage since there had been no finding that a contract
11 existed.
12       Dismissal here is thus not warranted.[4]  *See Professor Brainstorm, LLC v. Aronowitz*, 2009
13 WL 10675891, at *3 (C.D. Cal. Dec. 8, 2009) (Unlike *Paracor*, "this case is at the pleading stage.
14 At this stage, the Court has yet to determine what remedies are available.  It would be improper to
15 exclude the quasi contract claim on the basis that it cannot co-exist alongside a contract remedy
16 because the Court has yet to determine whether a contract remedy is available to Plaintiff.
17 Therefore, the Court denies Defendant's Motion to Dismiss Plaintiff's unjust enrichment claim.").
18       As for Defendants' argument that Rejoice fails to state an unjust enrichment claim against
19 HFSG because HFSG is not a party to the contract between Rejoice and Sentinel and Rejoice has
20 not alleged a sufficient relationship, "the notion of restoring something to a victim of unfair
21 competition includes two separate components: the offending party must have obtained something
22 to which it was not entitled and the victim must have given up something which he or she was
23 entitled to keep." *Day v. AT&T*, 63 Cal. App. 4th 325, 340 (1998).  "Plaintiffs simply need to
24 allege that [defendants] obtained money (or property) and that plaintiffs lost money or property as

---

[4] Judge Corley in *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 910 (N.D. Cal. 2020) cited *Paracor* in dismissing the unjust enrichment claims pleaded in that case. However, the unjust enrichment claim was primarily dismissed because "the Virus Exclusion applie[d] as a matter of law" and dismissed "for the additional reason that an action in quasi-contract does not lie 'when an enforceable, binding agreement exists defining the rights of the parties.'" *Id.* (quoting *Paracor*, 96 F.3d at 1167).

16

a result of defendants' unfair practices." *In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, 2020 WL 6271173, at *55 (N.D. Cal. Oct. 23, 2020) (citing *Cabebe v. Nissan of N.A., Inc.*, 2018 WL 5617732, at *5 (N.D. Cal. Oct. 26, 2018).

In *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1342 (2009), the plaintiff filed a class action against Farmers Group, Inc. under the UCL, seeking restitution of undisclosed service charges paid to Farmer's subsidiary, Prematic. Farmers appealed the award of restitution under the UCL because Prematic, not Farmers, was the direct recipient of the service charges. *Id.* at 1338. The California Court of Appeal affirmed, holding that it is not essential that money be paid directly to the recipient by the party seeking restitution. *Id.* at 1339. Because Prematic was acting as Farmer's wholly owned subsidiary in collecting premiums and service charges, the trial court did not abuse its discretion in finding that Farmer's benefited from those payments. *Id.* at 1340-1341.

As noted above, Rejoice specifically alleges that HFSG was unjustly enriched because "Sentinel, beholden to and controlled by its parent corporation, turned over all or some of the premiums collected from [Rejoice] and Class members to [HFSG]" such that those premiums "are held, possessed, controlled by, in custody of, accounted for on the records and books of, or otherwise owned by [HFSG]." FAC ¶ 63. Thus, Rejoice has allege a sufficient relationship between itself and HFSG to support a claim for unjust enrichment/restitution unpersuasive. *See Troyk*, 171 Cal. App. 4th. at 1342 ("Based on our review of the undisputed facts, we conclude there is substantial evidence to support the trial court's finding that FGI, FIE, and Prematic acted as a single enterprise and therefore FGI and FIE may be liable for UCL restitution").

For the forgoing reasons, the Court **DENIES** Defendants' motion to dismiss the unjust enrichment claim.

E.    Requests for Judicial Notice

On February 1, 2021, Defendants filed a request for judicial notice in support of their motion to dismiss Rejoice's amended complaint. *See* Docket No. 35. Defendants specifically request judicial notice of the following documents: (1) HFSG's Form 10-K filing for the fiscal year ending in 2019 obtained from the Securities and Exchange Commission website; (2) a copy

of the results of records search pertaining to the identities of direct or indirect subsidiaries of HFSG that do business in California from the California Department of Insurance website; (3) a copy of Rejoice's insurance policy with Sentinel for the policy year beginning on October 24, 2019 and ending on October 24, 2020, with confidential, proprietary, or otherwise sensitive business information redacted; and (4) a copy of various pages from Sentinel's August 13, 2010 California Department of Insurance Rate Filing that can be found in the DOI rate filing database online. *Id*.

Rejoice filed an objection to Defendants' request for judicial notice. *See* Docket No. 38. Rejoice specifically takes issue only with Defendants' Exhibit A, HFSG's Form 10-K filing. Rejoice argues that, "From a review of the MTD, what [HFSG] is asking the Court to take judicial notice of [] a hearsay statement [by] arguing that [HFSG] is separate and distinct from its subsidiaries . . . ." Rejoice notes that in Defendants' motion to dismiss, Defendants state that, "The Hartford Financial Services Group, Inc. . . . is a holding company for a group of subsidiaries that provide property and casualty . . . insurance . . . As a holding company, *The Hartford Financial Services Group, Inc. is separate and distinct from its subsidiaries* and has no significant business operations of its own." *Id*. at 2-3, (citing MTD at 3:9-10) (emphasis in original). Rejoice emphasizes that this "Court should not take judicial notice of disputed hearsay statements in SEC filings." *Id*. at 3.

A court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986). But a court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (holding that the district court erred by taking judicial notice of disputed matters in public records, specifically facts in dispute as to an extradition hearing and waiver).

As such, the Court agrees with Rejoice's objection and **DENIES** in part Defendants' request for judicial notice since what Defendants seek is to establish the truth of matters asserted in the document rather than the fact of its filing or existence. The Court specifically **DENIES** Defendant's request for judicial notice of HFSG's Form 10-K filing. However, the Court

**GRANTS** the remainder of Defendants' request for judicial notice.

On March 1, 2021, Rejoice filed a request for judicial notice. *See* Docket No. 37. Rejoice specifically requests the Court take judicial notice of the following agency generated documents: (1) California Insurance Commissioner Bulletin 2020-3 issued to all property and casualty insurers on April 13, 2020; (2) California Insurance Commissioner Bulletin 2020-4 issued to all property and casualty insurers on May 15, 2020; (3) California Insurance Commissioner Bulletin 2020-8 issued to all property and casualty insurers on December 3, 2020; (4) screenshot from California Department of Insurance Website index showing "Hartford Grp" submissions in response to Insurance Commissioner bulletins, titled: "CA COVID-19 Premium Refund Report Submissions – Company F to H"; and (5) HFSG's June 19, 2020, submission to the Insurance Commissioner, "Re: Response to Bulletin No. 2020-3 (Premium Refunds, Credits and Reductions in Response to COVID-19 Pandemic)" resubmitted November 13, 2020. *Id.* On April 6, 2021, Rejoice filed a supplemental request for judicial notice, specifically requesting that the court take judicial notice of California Insurance Commissioner Bulletin 2020-3, issued March 11, 2021. *See* Docket No. 52.

The Court can properly take judicial notice of these documents because there is no dispute that these are authentic documents of a government agency publicly available. *See* Fed. R. Evid. 201; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities . . . , and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein."). Accordingly, this Court **GRANTS** Rejoice's request for judicial notice.

///
///
///
///
///
///
///

### III. CONCLUSION

For the above reasons, the Court **DENIES** Defendants' Motion to Dismiss.

This order disposes of Docket No. 34.

**IT IS SO ORDERED**.

Dated: December 9, 2021

_____
EDWARD M. CHEN
United States District Judge