Daniel L. Rottinghaus, SBN 131949
  drottinghaus@berdingweil.com
Fredrick A. Hagen, SBN 196220
  fhagen@berdingweil.com
Gordon A. Walters, SBN 272683
  gwalters@berdingweil.com
BERDING & WEIL LLP
2175 N. California Blvd, Suite 500
Walnut Creek, California 94596
925/838-2090 (tel.) / 925/820-5592 (fax)

David M. Birka-White, SBN 85721
  dbw@birka-white.com
Laura A. Carrier, SBN 220154
  lcarrier@birka-white.com
BIRKA-WHITE LAW OFFICES
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999 (tel.) / (925) 362-9970 (fax)

Attorneys for Plaintiff REJOICE! COFFEE COMPANY, LLC,
a California limited liability company, on behalf of itself
and all others similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REJOICE! COFFEE COMPANY, LLC, a California limited liability company, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> THE HARTFORD FINANCIAL SERVICES GROUP, INC., a Delaware corporation; SENTINEL INSURANCE COMPANY, LTD., a Connecticut corporation; <br><br> Defendants. <br> _____ / | Case No. 3:20-cv-6789-EMC <br><br> **PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> DATE:  March 7, 2024 <br> TIME:  1:30 p.m. PST <br> COURTROOM.:  5, 17th FL <br><br> Honorable Judge Edward M. Chen |

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION                                    3:20-cv-6789-EMC

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 7, 2024 at 1:30 p.m., or as soon thereafter as counsel may be heard in the above-entitled Court, located at 450 Golden Gate Avenue, in Courtroom 5, 17th Floor, San Francisco, California 94102, before the Honorable Edward M. Chen, United States District Court Judge, Plaintiff REJOICE! COFFEE COMPANY, LLC ("Plaintiff"), on behalf of itself and the putative class of similarly situated individuals, by and through its counsel of record, will move the Court for Class Certification pursuant to Fed. R. Civ. P. 23. Specifically, Plaintiff will request that the Court enter an order:

(1)     Certifying a class of "All persons and entities who paid insurance premiums to Defendants THE HARTFORD FINANCIAL SERVICES GROUP, INC. and SENTINEL INSURANCE COMPANY, LTD., for property and casualty insurance policies in California, covering any period from April 1, 2020, through December 31, 2020" with respect to Counts I and II of the First Amended Complaint (ECF No. 28);

(2)     Appointing Named Plaintiff REJOICE! COFFEE COMPANY, LLC as class representative; and

(3)     Appointing BERDING & WEIL LLP and BIRKA-WHITE LAW OFFICES as class counsel.

(See Proposed Order.)

Plaintiff's Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, and the Declarations and Exhibits filed in support of this motion as well as any pleadings, papers, and records on file herein, all matters upon which judicial notice may be taken, any oral argument that may be presented, and upon such other matters the Court deems just and necessary. For all the reasons express herein, Plaintiff respectfully asks the Court to grant this Motion for Class Certification.

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION                    3:20-cv-6789-EMC

Date: December 18, 2023

BIRKA-WHITE LAW OFFICES

By: ___/s/ Laura A. Carrier___
      Laura A. Carrier

David M. Birka-White, SBN 85721
dbw@birka-white.com
Laura A. Carrier, SBN 220154
lcarrier@birka-white.com
BIRKA-WHITE LAW OFFICES
178 E. Prospect Avenue
Danville, CA 94526
(925) 362-9999 (tel.) / (925) 362-9970 (fax)


BERDING & WEIL LLP

By: ___/s/ Fredrick A. Hagen___
      Fredrick A. Hagen

Daniel L. Rottinghaus, SBN 131949
drottinghaus@berdingweil.com
Fredrick A. Hagen, SBN 196220
fhagen@berdingweil.com
Gordon A. Walters, SBN 272683
gwalters@berdingweil.com
BERDING & WEIL LLP
2175 N. California Blvd, Suite 500
Walnut Creek, California 94596
925/838-2090 (tel.) / 925/820-5592 (fax)

Attorneys for Plaintiff
Rejoice! Coffee Company, LLC

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION                                    3:20-cv-6789-EMC

# TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION AND MOTION ...................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.      INTRODUCTION ............................................................................................................. 1

II.     FACTUAL BACKGROUND .......................................................................................... 2

        A.  The Parties ............................................................................................................ 2

              1.  The Named Plaintiff ................................................................................... 2

                    a.  The Sentinel Spectrum Insurance Policies ..................................... 2

                    b.  The Rejoice COVID-19 Pandemic Experience ............................... 3

                    c.  No Premium Relief .......................................................................... 4

              2.  The Defendants ........................................................................................... 4

        B.  The COVID-19 Pandemic ..................................................................................... 5

              1.  COVID-19 Pandemic Business Closures ................................................... 5

              2.  California Insurance Commissioner Orders Premium Relief...................... 5

        C.  Defendants' Responses to the DOI ....................................................................... 8

        D.  Internal Analysis and Data ................................................................................... 9

        E.  Communications with Policyholders Regarding Premium Relief and
            Audit Adjustments During Covid Period .............................................................. 9

        F.  Plaintiff's Expert Has Provided Class-wide Loss Methodology ......................... 10

III.    PROCEDURAL BACKGROUND ................................................................................. 10

IV.     LEGAL ARGUMENT ................................................................................................... 11

        A.  Legal Standards for Class Certification................................................................ 11

        B.  Plaintiff Has Satisfied the Requirements of Rule 23(a) ...................................... 12

              1.  Numerosity is Satisfied – Rule 23(a)(1) .................................................. 12

              2.  Commonality is Satisfied – Rule 23(a)(2).................................................. 12

                    a.  UCL Claim ..................................................................................... 13

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION                                                3:20-cv-6789-EMC

b. Unjust Enrichment/Restitution Claim ............................................................16

3. Typicality is Satisfied – Rule 23(a)(3) ...........................................17

4. Adequacy is Satisfied – Rule 23(a)(4)............................................18

C. Plaintiff Has Satisfied the Requirements of Rule 23(b)(3) ...............................19

1. The Class is Sufficiently Ascertainable................................................19

2. Common Questions Predominate Over Individual Questions ..............................20

3. A Class Action Is Superior to Individual Lawsuits ...............................23

V.    CONCLUSION .......................................................................................25

BERDING & WEIL LLP
2175 N California Blvd. Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION                    3:20-cv-6789-EMC

1

## TABLE OF AUTHORITIES

2
**PAGE**

3
**Cases**

4
*Allen v. Hyland's Inc.*, 300 F.R.D. 643, 672 (C.D. Cal. 2014) ..............................................24

5
*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997)...........................................19, 20, 23

6
*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013)...........................11, 20

7
*Arnold v. State Farm Fire and Cas. Co.,* No. 2:17-cv-00148-TFM,
8
    2020 WL 6879271 (S.D. Ala. Nov. 23, 2020) ...................................................................22

9
*Arredondo v. Univ. of La Verne,* No. 22-CV-07665 MCS RAO,
    2022 WL 1183561 (C.D. Cal. Feb. 8, 2022) ....................................................................21

10
*Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753 (9th Cir. 2015) ......................................16

11
*Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir. 1975) ........................................................23

12
*Boschma v. Home Loan Center, Inc.,* 198 Cal.App.4th 230 (2011)......................................13

13
*Camacho v. Automobile Club of Southern California,* 142 Cal.App.4th 1394 (2006) ..........13

14
*Castillo v. Johnson,* 853 F.App'x 125, 126 (9th Cir. 2021)..................................................22

15
*Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
16
    20 Cal.4th 163, 180 (1999)...........................................................................................13, 14

17
*Chabner v. United of Omaha Life Ins. Co.,* 225 F.3d 1042 (9th Cir. 2000)..........................13

18
*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)............................................................22, 23

19
*Datta v. Asset Recovery Sols., LLC*, 2016 WL 1070666 (N.D. Cal. Mar. 18, 2016) .............19

20
*Davis v. HSBC Bank Nevada, NA,* 691 F.3d 1152, 1169 (9th Cir.2012) .............................13

21
*Day v. GEICO Cas. Co.*, No. 21-CV-02103-BLF,
    2022 WL 16556802 (N.D. Cal. Oct. 31, 2022) ..........................................................passim

22
*Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011)....................................18

23
*Feller v. Transamerica Life Ins. Co.,* No. 2:16-cv-01378-CAS,
24
    2017 WL 6496803 (C.D. Cal. Dec. 11, 2017)................................................................21

25
*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982)...................................................11

26
*Gregory v. Albertson's Inc.* 104 Cal.App.4th 845 (2002) ....................................................13

27
*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998)............................................20, 24

28
*Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1992) ...............................................17

BERDING & WEIL LLP
2175 N California Blvd Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION          3:20-cv-6789-EMC

*Hyunh v. Harasz*, 2015 WL 7015567 (N.D. Cal. Nov. 12, 2015) ..........................................19

*In re PFA Ins. Mktg. Litig.*, No. 4:18-CV-03771 YGR,
   2021 WL 5994908 (N.D. Cal. Nov. 3, 2021) .................................................16, 21

*Just Film, Inc. v. Buono,* 847 F.3d 1108 (9th Cir. 2017)..............................................17, 22

*Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134 (2003)..................................13

*Leyva v. Medline Indus. Inc.,* 716 F.3d 510 (9th Cir. 2013) ........................................23, 24

*Lozano v. AT&T Wireless Servs., Inc.,* 504 F.3d 718 (9th Cir. 2007 .....................................14

*Martin v. Monsanto Co.*, No. EDCV162168JFWSPX,
   2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ...................................................24

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).............................................12

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC,*
   31 F.4th 651 (9th Cir. 2022)...............................................................11, 20, 23

*Rodriguez v. Hayes,* 591 F.3d 1105 (9th Cir. 2010).....................................................17

*Rubio v. Capital One Bank,* 613 F.3d 1195 (9th Cir. 2010)...............................................13

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,* 72 Cal.App.4th 861 (1999) .................14

*Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC,
   2020 WL 1955643 (N.D. Cal. Apr. 23, 2020) (Chen, J.) ...................................12

*Smith v. State Farm Mutual Automobile Ins. Co.,* 93 CalApp.4th 700 (2001)........................13

*Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1066 (9th Cir. 2021).....................................11

*Torliatt v. Ocwen Loan Servicing, LLC*, No. 19-CV-04303-WHO,
   2021 WL 5230755 (N.D. Cal. Nov. 8, 2021) .............................................16, 23

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .................................................20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).................................................11, 12

*Yokoyama v. Midland Nat. Life Ins. Co.,* 594 F.3d 1087 (9th Cir. 2010) .............................23

**Other Authorities**

*Villanueva et al. v. Fidelity Nat'l Title Co.*, 2020 WL 1979401
   (Amicus Curiae Brief) ........................................................................25

15 U.S.C. §45(n).........................................................................................14

Business and Professions Code §17200 ...........................................................11, 13

Cal. Bus. & Prof. Code §17200 ........................................................................13

**BERDING & WEIL LLP**
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................................passim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION                    3:20-cv-6789-EMC

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3       This class action challenges Defendants THE HARTFORD FINANCIAL SERVICES

4  GROUP, INC. and SENTINEL INSURANCE COMPANY, LTD. (collectively, "Defendants")

5  unfair *application* of pre-pandemic insurance rates for its Spectrum Business Owner's Policies

6  during the changed circumstances created by the COVID-19 pandemic. At issue in this case is

7  Sentinel's "Spectrum Business Owner Policy" line, which provides insurance coverage for small

8  businesses for property and casualty risks, including the insurance policies purchased by Plaintiff.

9       Plaintiff REJOICE! COFFEE COMPANY, LLC ("Plaintiff" or "Rejoice") alleges that

10  Defendants unfairly collected and retained excessive premiums given the reduction in liability

11  risk caused by the decreased operations of Spectrum insured business owners as a result of the

12  COVID-19 pandemic and government mandates to shelter-in-place. Plaintiff and all putative

13  class members purchased the Spectrum policy to provide them with security against risk in

14  exchange for payment of insurance premium. The premium was set to reflect the amount of risk

15  they presented to the insurance pool.  After the pandemic hit, the risk of the entire insurance pool

16  fell precipitously.  Yet Hartford took unfair advantage of the pandemic at the expense of its

17  policyholders by refusing to provide premium relief.  This unfair conduct was in violation of

18  California Business and Professions Code §17200, et seq. (the "Unfair Competition Law" or

19  "UCL") and has unjustly enriched Defendants. This case is well-suited for class certification

20  under Fed. R. Civ. P. 23. Defendants committed the same unfair conduct with respect to each

21  putative class member. Both causes of action alleged in Plaintiff's First Amended Complaint—

22  Violations of the UCL and Unjust Enrichment/Restitution—can be resolved on a class-wide basis

23  by examining Defendants' conduct through common proof.

24       Even worse, contrary to the Bulletins issued by California Insurance Commissioner

25  Ricardo Lara, Hartford/Sentinel did not inform its Spectrum policyholders of even their potential

26  right to premium relief.  Defendants' communications to class members during the Covid period

27  were purposely manipulative and deceptive. Defendants could have easily provided clear and

28  simple notice to Spectrum policyholders that they were entitled to premium relief. Instead,

**BERDING & WEIL LLP**
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

Defendants sent disingenuous messages which sounded genuine, but were actually designed to obscure rights to premium relief, and thereby suppress inquiries for such relief.

Finally, Hartford's claim in its June 19, 2020 Response to Bulletin No. 2020-3 that it made "22,000 exposure adjustments" for California customers, "and over $12 million in returned premiums" (Ex. 1 to David M. Birka-White Declaration ("DBW Decl.") at p. 2) is directly contradicted by the worksheet responses to the California Department of Insurance ("DOI") wherein it expressly admits that it gave no premium relief whatsoever to Spectrum policyholders. (See Exs. 2-10 to DBW Decl.)  This is confirmed by the DOI's website listing of all insurance carriers that failed to provide any premium relief, which includes Sentinel. (Ex. 2 to DBW Decl.) Therefore, the public record proves that Defendants took no actions whatsoever that could be properly and fairly characterized as providing premium relief to its Spectrum policyholders.

As set forth below, there are common questions of fact and law capable of generating common answers and relief to the prospective class that make this lawsuit well suited for a class action. Furthermore, there is a manageable methodology for calculating class-wide relief, as outlined by Plaintiff's expert, Peter Scourtis. For these reasons, the Court should grant class certification.

## II.    FACTUAL BACKGROUND

### A.  The Parties

#### 1.  The Named Plaintiff

Plaintiff REJOICE! COFFEE COMPANY, LLC is a California limited liability company, doing business as Big House Beans, with its principal place of business at Antioch, California. Prior to the shelter in place orders, Rejoice conducted business at four insured commercial premises, including roasting coffee beans for retail and wholesale and operating coffee shops. (LeeAnn Krause Decl. ("Krause Decl.") ¶¶2, 9.)

##### a.     The Sentinel Spectrum Insurance Policies

Relevant to this motion, Plaintiff purchased a Spectrum Business Owner's Policy from Defendants SENTINEL INSURANCE COMPANY, LTD. for the policy period of October 24, 2019 through October 24, 2020. (Krause Decl. ¶10; Ex.11 to David M. Birka-White Declaration

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION                                3:20-cv-6789-EMC

("DBW Decl.") Plaintiff paid an initial premium of $6,736 for the 2019-2020 insurance policy. (Ex. 11 to DBW Decl. at p. REJOICE-0001050; Krause Decl. ¶11.) Effective November 26, 2019 a policy change to add coverage for a new store location increased the premium amount by an additional $3,086. (See Ex.12 to DBW Decl. at REJOICE-0012851; Krause Decl. ¶12.) Additional premium was charged to Plaintiff through policy endorsements on March 10, 2020, September 24, 2020 and September 29, 2020 totaling $284, $161 and $1,172, respectively. (See Ex. 12 to DBW Decl. at REJOICE-0012841 and REJOICE-0012831; Krause Decl. ¶13.) Finally, an end of year audit of the policy resulted in an additional payment of $859 by Plaintiff. (See Ex. 13 at REJOICE-0003041; Krause Decl. ¶14 to DBW Decl.)  Thus, Plaintiff paid a total of $11,439 in premium for the 2019-2020 coverage period.

The policy was renewed for a successive policy term of October 24, 2020 through October 24, 2021. (Ex. 14 to DBW Decl.; Krause Decl. ¶16.)  Plaintiff paid a premium of $9,864 for this 2020-2021 policy. (Ex. 14 to DBW Decl. at REJOICE-0000852; Krause Decl. ¶16.) The end of year audit resulted in an additional $913 in premium charged to Plaintiff. (See Ex. 13 to DBW Decl. at REJOICE-0003037; Krause Decl. ¶17.) This resulted in a total payment of $10,077 for the 2020-2021 policy period. **Plaintiff received no premium relief from Defendants on either of these policies due to the COVID-19 pandemic.** (Krause Decl. ¶19)

### b.    The Rejoice COVID-19 Pandemic Experience

Plaintiff owns a roasting facility in Antioch, California. (Krause Decl. ¶20.) Prior to the pandemic, the facility operated four to five days per week from 9:00 a.m. to 5:00 p.m. (Ibid.) After the pandemic began, Plaintiff resumed limited operations at its store locations, the roaster facility was reopened one day per week from 9:00 a.m. to 1:00 p.m. (Ibid.) These operations slowly increased as business demands and current restrictions allowed. (Ibid.)

Covid shut down the Rejoice Brentwood café.  Prior to the shutdown, the Brentwood café operated seven days a week from 7:00 a.m. to 5:00 p.m. (Id. at ¶21.) Upon the initial reopening in April 2020, the hours of operation were reduced to 8:00 a.m. to 12:00 p.m. (Ibid.) Initially, customers were served to go orders at the exterior of the café.  (Ibid.) Later, the café was approved for outdoor dining. The hours of operation eventually increased to 7:30 a.m. to 3:00

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION                                        3:20-cv-6789-EMC

1    p.m. sometime after 2020.  (Ibid.)  Just before the COVID shutdown, Plaintiff opened a third

2    location in a large commercial building in Walnut Creek, California on February 27, 2020. (Id. at

3    ¶22.) Because of the lack of employees in the office building due to the shutdown orders,

4    Plaintiff did not attempt to reopen until August 2020. (Ibid.) After two weeks, this location was

5    closed due to lack of customer activity in the office building. (Ibid.) The Walnut Creek store

6    remained closed until January 2022. (Ibid.)

7         Plaintiff also opened a fourth location in the Brentwood library in August, 2020. (Id. at

8    ¶23.) This location was built out as a small service window within the library.  (Ibid.) Rejoice

9    opened this store in August 2020. (Ibid.) However, Plaintiff had to close this location in

10   November 2020 due to the lack of customers. (Ibid.) Plaintiff eventually sold this lease to another

11   company in June 2021. (Ibid.)

12                          **c.      No Premium Relief**

13        The revenues from Plaintiff's stores were substantially reduced due to the COVID

14   shutdown and pandemic. (Id. at ¶24.) As a result, Plaintiff contacted Hartford and inquired about

15   a possible claim for business interruption due to the pandemic. (Ibid.) Hartford denied Plaintiff's

16   business interruption coverage claim. (Ibid.)  In 2020, Hartford knew that Plaintiff's revenues had

17   severely dropped, but did not provide any premium relief or even suggest to Plaintiff that

18   premium relief might be available. (Ibid.)  Plaintiff desperately needed  premium relief in 2020.

19   Defendants unfairly treated Plaintiff and all other customers who purchased the Spectrum policy

20   for failure to provide appropriate premium relief.  (Id. at ¶27.)

21                     **2.  The Defendants**

22        Defendant THE HARTFORD FINANCIAL SERVICES GROUP, INC. ("Hartford") is a

23   Delaware based insurance company and the owner of its wholly owned subsidiary, Defendant

24   SENTINEL INSURANCE COMPANY, LTD. ("Sentinel"). (Ex. 15 at 22:14-25.)

25        Sentinel operates as an insurance company and it markets and sells property and casualty

26   insurance services in California as one of The Hartford's companies. (Ibid.)

27   / / /

28   / / /

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

### B. The COVID-19 Pandemic

#### 1. COVID-19 Pandemic Business Closures

In late 2019 and early 2020, the COVID-19 pandemic began impacting the global community in countless physical, economic, and emotional ways, requiring the reevaluation of the methodologies used to derive premiums charged to policyholders for many lines of insurance, as the pandemic was not accounted for when insurers established their rates in effect at the beginning of the pandemic. (Scourtis Decl. at ¶¶17-18.) In the words of Hartford: "The COVID-19 pandemic is obviously unlike anything we've seen before as it has swept across the entire country adversely impacting almost every business and citizen." (Ex. 1 to DBW Decl. at p. 1, Ex. 3 to DBW Decl. at p. REJOICE-0003394.)

On March 4, 2020, California Governor Gavin Newsom "proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19." (Ex. 16 to DBW Decl. at p. 1.) On March 19, 2020, Newsom issued Executive Order N-33-20, which ordered "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors…" in order to protect public health and safety. (Id.)

All nonessential California businesses were required to close their premises to customers and employees and to substantially reduce business operations. Like many other small businesses in California, Plaintiff's business was forced to close. (Krause Decl. ¶¶ 20-23; Ex. 17 at 23:1-24:20; 36:25-37:18; 65:2-18.) Upon reopening, Plaintiff was forced to modify operations, not allowing customers inside the store locations, but rather providing walkup windows and delivering coffee to customers outside of the store. (Krause Decl. ¶¶ 20-23)

#### 2. California Insurance Commissioner Orders Premium Relief

On April 13, 2020, DOI issued Bulletin 2020-3 recognizing that "the COVID-19 pandemic caused an unprecedented challenge for California's businesses" and had "severely curtailed activities of policyholders in both personal and commercial lines," so that "projected loss exposures of many insurance policies have become overstated or misclassified." (Ex. 18 to DBW Decl. at p. 1.)

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

"To protect consumers and to provide consistent direction to the insurance industry regarding misclassifications of risk resulting from the COVID-19 pandemic," DOI Commissioner, Ricardo Lara ordered "insurers to make an initial premium refund for the months of March and April to all adversely impacted California policyholders," including commercial multiple peril insurance policies, "as quickly as practicable, but in any event no later than 120 days after the date of this Bulletin," i.e., by August 11, 2020. (Id. at pp. 1-2.) Commissioner Lara "grant[ed] each insurer reasonable flexibility in determining how best to quickly and fairly accomplish the refund of premium to policyholders," allowing insurers to "comply with the premium refund order by providing a premium credit, reduction, return of premium, or other appropriate premium adjustment." (Id. at p. 2.) Insurers were permitted to "refund premium without prior approval by the [DOI] if they apply a uniform premium reduction for all policyholders in an individual line of insurance, for recent, current, and upcoming policy periods or any portion thereof." (Ibid.)

"Where there are risk misclassifications resulting in premium overcharges, insurers should immediately reclassify risks and refund premium." (Ibid.) "Whether choosing one of the above-described approaches, or an alternative approach, insurers shall, no later than 120 days after the date of this Bulletin, provide each affected policyholder, if applicable, with a notification of the amount of the refund, a check, premium credit, reduction, return of premium, or other appropriate premium adjustment." (Id. at p. 3.) Commissioner Lara also ordered all insurers writing an applicable line of insurance in California "to report to the [DOI] within 60 days… all actions taken and contemplated future actions to refund premium in response to or consistent with this Bulletin." (Ibid.)

A subsequent Bulletin 2020-4 was issued by the DOI on May 15, 2020, extending "the directives set forth in Bulletin 2020-3 to reduce premium in the affected lines of insurance where the projected loss exposures have become overstated or misclassified… through May 31, 2020." (Ex. 19 to DBW Decl. at p. 2.) This Bulletin also required insurers to report to the DOI "information with respect to any premium adjustments for May 2020." (Ibid.)

/ / /

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION                                          3:20-cv-6789-EMC

Bulletin 2020-8 was issued by the DOI on June 25, 2020, extending the prior reporting requirements and directives to June 2020 and to "any months subsequent to June if the COVID-19 pandemic continues to result in projected loss exposures remaining overstated or misclassified." (Ex. 20 to DBW Decl. at p. 1.) Bulletin 2020-8 also clarified that the extension of reporting requirements did not change the previous deadlines for insurers to provide premium relief, i.e., by August 11, 2020. (Ibid.)

On December 3, 2020, the DOI issued an Amended Bulletin 2020-8, which modified the original Bulletin to include that if "any premium relief is provided for the months of September, October, November or December, that information shall be submitted to the [DOI] no later than February 1, 2021." (Id. at p. 2.) The Amended Bulletin also clarified that going forward insurers should continue to "provide premium relief information to the [DOI] on a quarterly basis as of the last day of each subsequent calendar quarter in which a premium adjustment is provided… within 30 days of the end of each subsequent calendar quarter." (Ibid.)

On March 11, 2021, the DOI issued Bulletin 2021-03 (Ex. 21 to DBW Decl.), which noted "[t]o date, private passenger automobile insurance companies have returned more than $1.75 billion in premium for 2020 to California drivers," but "based on extensive analysis of data received, the Department's review of this loss data demonstrates the premium relief that insurance companies provided to their policyholders was insufficient, leaving consumers paying inflated premiums while they continue to experience reduced risk of loss." (Id. at p. 1.) Bulletin 2021-03 "directs insurance companies," not just auto insurance companies, "to take the following actions:" (i) "Do more to return additional premium relief from March 2020 forward, and report these additional premium returns to the Department, commensurate with continuing reductions in the exposure to loss for particular lines of insurance"; (ii) "Communicate with their policyholders about how they will return premiums, as well as options available to consumers to reduce their ongoing premium"; and (iii) "Consult this bulletin when seeking clarification regarding the directives and reporting requirements set forth here and in Bulletins 2020-3, 2020-4 and 2020-8." (Id. at p.1.)

/ / /

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION                                    3:20-cv-6789-EMC

C.  **Defendants' Responses to the DOI**

Defendants submitted their first response to the DOI on June 12, 2020. (Ex. 3 to DBW Decl..) In this response, Defendants acknowledged its reduced exposures nationwide but went on to clarify that they did not believe ***any** premium adjustments were necessary for their property and casualty lines of business*, stating: ***"The Hartford completed an internal review across our property and casualty lines of business to determine whether rates in any lines of business are excessive, inadequate or unfairly discriminatory when considering the pandemic. We have concluded based on the available data and our analysis that none of our property and casualty lines of business, with the exception of personal lines auto, have a measure of risk that is substantially overstated."*** (Id. at p. REJOICE-0001036.) (emphasis added)

A follow up response was sent to the DOI on February 1, 2021, reporting ongoing relief measures for the period of September through December 2020.  (Exs. 5, 6 to DBW Decl.) For Sentinel, this response confirmed no premium relief was **provided**, and cited back to the June 2020 memorandum for the basis of this response. (Id.)

On April 30, 2021, a subsequent memorandum was sent to the DOI in response to Bulletin 2021-03. (Exs. 7, 8 to DBW Decl.) In this response, Defendants once again reiterated their earlier position that: "we conducted a thorough review of The Hartford's Personal and Commercial lines of business. ***That review confirmed that risk exposures are not substantially overstated due to the pandemic and that an across-the-board return of premium to policyholders is not warranted, and certainly not prudent at this time."*** (Ex. 7 to DBW Decl. at p. REJOICE-0003253.) (emphasis added) In this response, Defendants updated their premium relief totals in California providing: For California customers alone, this translates into about 53,000 exposure adjustments and over $85 million in premium returned. We also continue to make adjustments where appropriate and upon request based on changes in payroll, sales and vehicles that are no longer in service regularly." (Id.)

In direct contradiction to this statement to the DOI, in its final responsive memorandum was sent to the DOI on July 30, 2021. Sentinel's excel workbook included with this response once again referred back to the prior memorandum submitted with its response to the DOI, which

1   confirmed no premium relief was being provided to its California Spectrum policyholders. (Ex.

2   10 to DBW Decl.)

3         **D.   Internal Analysis and Data**

4         Despite the responses to the DOI, Defendants' own internal analysis and data from the

5   period of April 1, 2020 to December 31, 2020 provide a different story. ████████████████

6   ████████████████████████████████████████████████████ (Ex. 22 to DBW Decl.

7   at  p.  REJOICE-0014028.) ████████████████████████████████████████████

8   ██████████████████████████████████████████████████████████. (Id.  at  p.

9   REJOICE-0014027.) ██████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████████

11  ██████████████████ (Id. at p. REJOICE-0014028.)

12  ██████████████████████████████████████████████████████████████

13  ██████████████████████████████████████████████████████████████

14  ██████████████████████████. (Scourtis Decl. ¶38, Exhibit 3 to Scourtis Decl.) This

15  is further supported by Defendants' application for a 21.6% liability rate decrease in 2023 to the

16  DOI. (Scourtis Decl. ¶38; See Ex. 23 to DBW Decl. at p. REJOICE-0014105.)

17        **E.   Communications with Policyholders Regarding Premium Relief and Audit**

18                 **Adjustments During Covid Period**

19        Chris Jones, Defendants' Rule 30(b)(6) witness, testified to the following facts regarding

20  Sentinel's actions with respect to premium relief: ████████████████████████████

21  ████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ██████████ (Ex. 15 to DBW Decl. at 63:7-72:8.) ████████████████████████

24  ████████████████████████████████████████████████████████████

25  ████████████████████ (Id. at 63:7-35:18.) ████████████████████████████

26  ████████████████████████████ (Id. at 65:5-18.) The testimony of Chris Jones is

27  belied by Hartford's own emails to its Spectrum policyholders.  The emails actually stated: "If

28  you have a policy that is subject to an annual premium audit, we will be flexible with respect to

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION           3:20-cv-6789-EMC

the completion of final premium audits"; and "We also know that administrative tasks like . . .

completing premium audits will not be top priorities for customers impacted by COVID-19. To

help ease that burden, we are committed to being flexible with respect to the completion of final

audits." (Exs. 24 and 25 to DBW Decl.) ***None of these communications referred to any***

***premium adjustments or relief.*** Defendants also referred policyholders to Hartford's online

COVID-19 Resource Center, which did not make any reference to premium adjustments or relief

for commercial policies. (Ex. 25 to DBW Decl. at p. REJOICE-0011977 (available at

https://www.thehartford.com/coronavirus and

https://www.thehartford.com/coronavirus/businesses.) Notwithstanding Defendants' repeated

communications to the putative class members during the Covid period, ***at no time did they***

***notify class members of the right to premium relief.***

### F.  Plaintiff's Expert Has Provided Class-wide Loss Methodology

Plaintiff's expert has proposed utilizing the following formula for calculating the

premium refund owed to each class member:

$$PRy = EPICIPy * RPRatio$$

y = Class Member y

PRy = Premium Refund due to class member y

EPICIPy = Class Member y's Earned Premium in COVID Impact Period

RPRatio = Return Premium Ratio

The RPR (Return Premium Ratio) is the appropriate ratio due to policyholders in the

class. Based on 25% to 35% refund for the liability premium the RPRatio is 10% to 15% of the

total premium. (Scourtis Decl. ¶¶41-42.)

### III.   PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit on September 29, 2020 alleging two counts for (1) Unjust

Enrichment/Restitution and (2) Violations of Business and Professions Code § 17200, et seq.

(ECF No. 1, see ¶¶33-46.) The First Amended Complaint was filed on December 21, 2020,

alleging the same two counts. (ECF No. 28, see ¶¶51-65.) The Court denied Defendants' Motion

to Dismiss with respect to both claims on December 8, 2021. (ECF No. 68.)

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

1    **IV.    LEGAL ARGUMENT**

2    Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks certification of Counts I and II of the First

3    Amended Complaint on behalf of a class of "All persons and entities who paid insurance

4    premiums to Defendants THE HARTFORD FINANCIAL SERVICES GROUP, INC. and

5    SENTINEL INSURANCE COMPANY, LTD., for property and casualty insurance policies in

6    California, covering any period from April 1, 2020, through December 31, 2020." (See Ex. 26 to

7    DBW Decl. at 5:26-28.) This case is the paradigmatic class action. Both causes of action—

8    Violation Business and Professions Code §17200, et seq. and Unjust Enrichment/Restitution—

9    can be resolved on a class-wide basis by providing uniform relief to the proposed class. Indeed,

10   Defendants' decision to not provide any premium refunds or other premium relief in response to

11   the DOI order demanding refunds uniformly impacts all members of the proposed class.

12   **A.  Legal Standards for Class Certification**

13   Fed. R. Civ. P. 23 governs class certification. A class action "saves the resources of both

14   the courts and the parties by permitting an issue potentially affecting every class member to be

15   litigated in an economical fashion[.]" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982)

16   (quotations and modifications omitted). Every class action must meet the four prerequisites of

17   Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). "In

18   addition to Rule 23(a)'s requirements, the class must meet the requirements of at least one of the

19   three different types of classes set forth in Rule 23(b)." *Stromberg v. Qualcomm Inc.*, 14 F.4th

20   1059, 1066 (9th Cir. 2021) (internal quotations and citations omitted). "[The] plaintiffs must

21   prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are

22   satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble

23   Bee Foods, LLC*, 31 F.4th 651, 665 (9th Cir. 2022) ("*Olean*"). The court may grant certification

24   only after conducting a "rigorous analysis" confirming that the requirements are met. *Wal-Mart

25   Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). However, "Rule 23 grants courts no license to

26   engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans

27   & Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—

28   but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

1   class certification are satisfied." *Id*. As the Ninth Circuit has explained, although the court must

2   "resolve disputes about historical facts if necessary to determine whether the plaintiffs' evidence

3   is capable of resolving a common issue central to the plaintiffs' claims," it would "put the cart

4   before the horse" to require the plaintiffs to show at class certification that they will ultimately

5   prevail on the merits of the underlying claims. *Olean, supra,* 31 F.4th at 667.

6   ### B.  Plaintiff Has Satisfied the Requirements of Rule 23(a)

7   #### 1.   Numerosity is Satisfied – Rule 23(a)(1)

8       Rule 23(a)(1) is satisfied where "the class is so numerous that joinder of all members is

9   impracticable." Fed. R. Civ. P. 23(a)(1). "No exact numerical cut-off is required; rather, the

10  specific facts of each case must be considered." *Day v. GEICO Cas. Co*., No. 21-CV-02103-BLF,

11  2022 WL 16556802, at *6 (N.D. Cal. Oct. 31, 2022) (quotation and citation omitted). "[C]ourts

12  have routinely found the numerosity requirement satisfied when the class comprises 40 or more

13  members." *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2020 WL 1955643, at *40 (N.D.

14  Cal. Apr. 23, 2020) (Chen, J.) (quotation and citation omitted). Here, numerosity is satisfied, as

15  the proposed class contains approximately 107,000 to 120,000 members. (See Ex. 15 to DBW

16  Decl. at 73:22-25; See also Ex. 27 to DBW Decl. at p. REJOICE-0014217.)

17  #### 2.   Commonality is Satisfied – Rule 23(a)(2)

18      Rule 23(a)(2) is satisfied by a showing that "there are questions of law or fact common to

19  the class." Fed. R. Civ. P. Rule 23(a)(2). "Commonality only requires a single significant

20  question of law or fact." *Day v. GEICO*, 2022 WL 16556802, at *6 (brackets and quotation

21  omitted) (*quoting Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 589 (9th Cir. 2012), overruled

22  on other grounds by Olean, 31 F.4th 651); *see also Wal-Mart Stores, Inc., supra,* 564 U.S. at 359

23  ("even a single common question will do") (internal quotation marks and modifications omitted);

24  The commonality requirement is satisfied where "the class members' claims depend upon a

25  common contention of such a nature that it is capable of classwide resolution—which means that

26  determination of its truth or falsity will resolve an issue that is central to the validity of each one

27  of the claims in one stroke." *Id*. at 350.

28  / / /

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

1    Plaintiff has alleged two causes of action: (1) Violation Business and Professions Code

2  §17200, et seq.; and (2) Unjust Enrichment/Restitution. (See First Amended Complaint, ECF No.

3  28 at ¶¶51-59, 60-65.) Both claims involve questions of law and fact that are common to the class

4  and will drive the ultimate resolution of this litigation.

5                          **a.   UCL Claim**

6    The UCL prohibits "unfair competition" and provides three causes of action: (1)

7  unlawful, (2) unfair, and (3) fraudulent business acts or practices. Cal. Bus. & Prof. Code

8  §17200; *Rubio v. Capital One Bank,* 613 F.3d 1195, 1203 (9th Cir. 2010). Here, Plaintiff asserts

9  claims under the "unfair" prong.

10    The UCL was intended "to provide an equitable means through which both public

11  prosecutors and private individuals can bring suit to prevent unfair business practices and restore

12  money or property to victims of these practices." *Korea Supply Co. v. Lockheed Martin Corp.,* 29

13  Cal.4th 1134, 1150 (2003). Thus, whether a business act or practice comes under the UCL is

14  given a broad interpretation, especially at the pleading stage. *Chabner v. United of Omaha Life*

15  *Ins. Co.,* 225 F.3d 1042, 1048 (9th Cir. 2000) (Collection of insurance premiums considered

16  business practice for purposes of UCL claims).

17    Under the "unfair" prong of the UCL, "a practice may be deemed unfair even if not

18  specifically proscribed by some other law." *Cel–Tech Communications, Inc. v. Los Angeles*

19  *Cellular Telephone Co.,* 20 Cal.4th 163, 180 (1999) ("Cel-Tech"). *Cel-Tech's* criticism of the

20  prevailing "unfair" definition and adoption of the FTC's current definition, which the court

21  explicitly limited to antitrust actions, led to confusion regarding the applicable standard in

22  consumer cases. See *Davis v. HSBC Bank Nevada, NA,* 691 F.3d 1152, 1169 (9th Cir.2012). As a

23  result, California courts use three competing tests to define "unfair" in the context of non-

24  antitrust actions. See *Boschma v. Home Loan Center, Inc.,* 198 Cal.App.4th 230, 252–253 (2011)

25  (Compare *Smith v. State Farm Mutual Automobile Ins. Co.,* 93 CalApp.4th 700, 718-719 (2001)

26  (adopting the balancing test) with *Gregory v. Albertson's Inc.* (2002) 104 Cal.App.4th 845, 854

27  (adopting the tethering test); see also *Camacho v. Automobile Club of Southern California,* 142

28  Cal.App.4th 1394, 1403 (2006) (adopting the FTC test for unfairness set forth in 15 U.S.C.

-13-

**BERDING & WEIL LLP**
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION                                3:20-cv-6789-EMC

1    §45(n)).

2          Under the balancing test, courts balance "the harm to the consumer against the utility of

3    the defendant's practice." *Lozano v. AT&T Wireless Servs., Inc.,* 504 F.3d 718, 731–32 (9th Cir.

4    2007) (citing *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,* 72 Cal.App.4th 861, 85

5    (1999)). Under the tethering test, the alleged unfairness must "be tethered to some legislatively

6    declared policy" or there must be "proof of some actual or threatened impact on competition." *Id.*

7    at 735 (quoting *Cel-Tech, supra,* 973 P.2d at 567).

8          There are common questions of law and fact with respect to Plaintiff's UCL claim.

9    Defendants committed the same conduct with respect to each putative class member, i.e., unfairly

10   charging rates for small business insurance premiums during the COVID-19 pandemic that were

11   no longer based on an accurate assessment of risk and failing to provide adequate premiums

12   relief to all of its policyholders. (*See supra,* secs. II. C – II. E.)

13         **Common questions of law and fact include:**

14         • Whether Defendants should have provided premium relief to the class members

15           because of reduced risk during the Covid-19 pandemic.

16         • Whether the Defendants' conclusions reported to the DOI in April 2021, that "risk

17           exposures are not substantially overstated due to the pandemic and that an across-

18           the-board return of premium to policyholders is not warranted," were accurate.

19         • Whether Defendants did provide relief to the class members as follows:

20              • Whether the 22,000 exposure adjustments reported in June 2020 were in

21                fact premium relief.

22              • If so, why were equivalent or larger audit adjustments made during non-

23                COVID-19 years.

24              • Whether the remainder of the Spectrum policyholder class members who

25                did not receive exposure adjustments received any form of premium relief.

26         • Whether the Defendants' conduct was an unfair business practice in violation of

27           the UCL by:

28              • Failing to provide adequate premium relief to all class members.

-14-

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION                                    3:20-cv-6789-EMC

- Failing to provide adequate/fair notice to all class members that they were entitled to premium relief;

- Using a method of notice to class members designed to confuse and misdirect Spectrum policyholders;

- By using language, when communicating with Spectrum policyholders, that was designed to conceal from policyholders their right to premium relief;

- Requiring class members to contact Sentinel in order to request consideration for premium relief, thereby putting *the onus on policyholders of seeking premium relief*;

- Requiring a process for requesting consideration for premium relief selected for the purpose of yielding low results and *deliberately made it unclear how to get premium relief*;

- Failing to provide instructions to agents/brokers for handling for premium relief inquiries] thereby *deliberately making it unclear how to get premium relief*;

- What Sentinel's Spectrum property coverage losses were for the Covid period and whether they were lower than expected when the corresponding premiums were charged;

- What Sentinel's Spectrum liability coverage losses were for the Covid period and whether they were lower than expected when the corresponding premiums were charged.

The common questions raised by Plaintiff's UCL claim thus include:

- Whether Sentinel had a common policy or practice of charging rates for small business insurance premiums during the pandemic that were no longer based on an accurate assessment of risk and failing to provide adequate refunds to policyholders;

- Whether the alleged conduct meets the applicable tests for unfairness under the

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION                                3:20-cv-6789-EMC

1    UCL;

2    • Whether the alleged conduct caused the members of the putative class to lose

3        money; and

4    • The proper calculation and measure of relief to the class.

5    (See First Amended Complaint, ECF No. 28 at ¶¶51-59.)

6        And the answers to these questions will be decided at trial through common, class-wide

7    proof.

8        Based on this same set of common evidence the finder of fact will be able to decide on a

9    class-wide basis whether Defendants' conduct during the pandemic establishes a claim of

10   unfairness under the UCL. See, e.g., *Day v. GEICO Casualty Company*, 2022 WL 16556802, at

11   *6 (N.D. Cal. Oct. 31, 2022) (finding commonality in UCL action asserting overcharging auto

12   insurance premiums during the COVID-19 pandemic); *Torliatt v. Ocwen Loan Servicing, LLC*,

13   No. 19-CV-04303-WHO, 2021 WL 5230755, at *6 (N.D. Cal. Nov. 8, 2021) (finding

14   commonality in UCL action challenging uniform illegal loan payment fees); *In re PFA Ins. Mktg.*

15   *Litig.*, No. 4:18-CV-03771 YGR, 2021 WL 5994908, at *8 (N.D. Cal. Nov. 3, 2021) (granting

16   class certification where common questions included "whether defendants' alleged [insurance

17   marketing] scheme is unfair under the unfair prong of the UCL because it 'offends an established

18   public policy' or is 'tethered to some legislatively declared policy'").

19       And the same is true with respect to the relief that is sought. As discussed in more detail

20   in the context of predominance, the losses suffered by each class member as a result of

21   Defendants' conduct will be quantified by Plaintiff's expert through a straightforward

22   calculation, using Defendants' standard business records. (Scourtis Decl. at ¶¶35-43.)

23                          **b.   Unjust Enrichment/Restitution Claim**

24       The term "unjust enrichment," which is synonymous with "restitution," describes a theory

25   "underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud,

26   coercion, or request." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

27       Plaintiff's claim for unjust enrichment and restitution is based on the same acts of

28   Defendants which underlie its claim for violations of the UCL, namely that Defendants continued

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION                                    3:20-cv-6789-EMC

1    to collect and retain excessive premiums in violation of the UCL, which resulted in their unjust

2    enrichment. (See Order denying Defendants' Motion to Dismiss First Amended Complaint, ECF

3    No. 68 at 14:19-24.)

4        Just as with the UCL claim, the amounts owed to the putative class for these alleged

5    violations can be calculated on the same class-wide basis. (Scourtis Decl. ¶¶35-43.)

6        **3.   Typicality is Satisfied – Rule 23(a)(3)**

7        Rule 23(a) requires that "the [legal] claims or defenses of the representative parties [be]

8    typical of the claims or defenses of the class." Fed. R. Civ. P. Rule 23(a)(3). The typicality

9    requirement "is satisfied when each class member's claim arises from the same course of events,

10   and each class member makes similar legal arguments to prove the defendant's liability."

11   *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010) (internal quotation marks and citation

12   omitted). "The requirement is permissive, such that representative claims are typical if they are

13   reasonably coextensive with those of absent class members; they need not be substantially

14   identical." *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation

15   marks and citation omitted).

16       In *Day v. GEICO*, the fact that the plaintiff "held a GEICO insurance policy during the

17   pandemic" was sufficient to make her claim "that GEICO's application of its rates was unfair

18   during COVID-19" typical of the class, without regard to any of the plaintiff's individual

19   circumstances that GEICO raised to challenge typicality. *Day, supra,* 2022 WL 16556802, at *7.

20   In this case, Rejoice and the putative class members all suffered the same injury arising from the

21   same course of conduct—the Defendants' failure to provide appropriate premium relief—and all

22   assert the same two legal claims, (1) unfairness under the UCL, and (2) unjust enrichment. (See

23   First Amended Complaint, ECF No. 28 at ¶¶51-65.) As in *Day v. GEICO*, this satisfies the

24   typicality requirement, and any individual variances are immaterial. *See id.*; *see also Hanon v.*

25   *Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (essential test for typicality is "whether

26   other members have the same or similar injury, whether the action is based on conduct which is

27   not unique to the named plaintiffs, and whether other class members have been injured by the

28   same course of conduct") (internal quotation marks and citation omitted).

**BERDING & WEIL LLP**
2175 N California Blvd Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION      3:20-cv-6789-EMC

1

**4.   Adequacy is Satisfied – Rule 23(a)(4)**

2

In determining the adequacy of a class representative, the Court "must resolve two

3

questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other

4

class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

5

on behalf of the class?" *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011)

6

(internal quotation marks and citation omitted). Fed. R. Civ. P. Rule 23(a)(4) requires that the

7

representative party will fairly and adequately protect the interests of the class. "Adequate

8

representation depends on, among other factors, an absence of antagonism between

9

representatives and absentees, and a sharing of interest between representatives and absentees."

10

*Ellis, supra,* 657 F.3d at 985.

11

Plaintiff Rejoice was a California-based Spectrum policyholder at the inception of the

12

COVID-19 pandemic, renewed its California policy with Defendants effective October 24, 2020,

13

and received no refund or other premium relief from Defendants as a result of the reduced

14

liability exposure caused by the COVID-19 pandemic. (Krause Decl. ¶24.)  (Exs. 11, 14 to DBW

15

Decl.) Plaintiff's claims, as well as the claims of the putative class, are based on the same alleged

16

conduct by Defendants. Plaintiff has likewise shown its commitment to vigorously prosecuting

17

the litigation and the principals have been actively involved in the case. (Krause Decl. ¶8.)

18

Plaintiff's representative, LeeAnn Krause, provided relevant information and documents,

19

reviewed the complaint filed on behalf of Plaintiff, and each sat for deposition. (Krause Decl.

20

¶¶6-7.) Furthermore, Plaintiff has no interests antagonistic to the class. (Krause Decl. ¶4; DBW

21

Decl. ¶16; Hagen Decl. ¶14) Rather, it has the same interests and has suffered the same injury as

22

the putative class members. Plaintiff is an adequate class representative.

23

With respect to the adequacy of counsel, Rule 23(g) provides a non-exclusive list of

24

factors for consideration, including: (1) the work counsel has done in identifying or investigating

25

potential claims in the action; (2) counsel's experience in handling class actions, other complex

26

litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the

27

applicable law; and (4) the resources that counsel will commit to representing the class. *See* Fed.

28

R. Civ. P. 23(g).  (DBW Decl. ¶¶11-14; Hagen Decl. ¶¶5-12.) There is no question that class

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

1    counsel will fairly and adequately represent the members of the putative class.

2    Here, the putative class counsel is the law firms of BERDING & WEIL LLP and BIRKA-

3    WHITE LAW OFFICES. Each of these firms has extensive experience in handling class actions

4    and other complex litigation, knowledge of the applicable law, and adequate resources that they

5    will commit to representing the class. (DBW Decl. ¶¶2-10; Hagen Decl. ¶¶5-12;) Plaintiff

6    submits the declarations of David M. Birka-White and Fredrick A. Hagen regarding the

7    qualifications of each firm. (DBW Decl. ¶¶2-10; Hagen Decl. ¶¶5-12.)

8    As they have done thus far, counsel will continue to fairly and adequately protect the

9    interests of the class through the remaining discovery period and trial.

10   **C.  Plaintiff Has Satisfied the Requirements of Rule 23(b)(3)**

11   "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification

12   must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Products,*

13   *Inc. v. Windsor,* 521 U.S. 591, 614 (1997). Here, Plaintiff seeks certification under Rule 23(b)(3),

14   which requires a finding "that the questions of law or fact common to class members

15   predominate over any questions affecting only individual members, and that a class action is

16   superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

17   R. Civ. P. 23(b)(3). "Further, parties seeking to certify a Rule 23(b)(3) class must also

18   demonstrate that the class is sufficiently ascertainable." *Datta v. Asset Recovery Sols., LLC*, 2016

19   WL 1070666, at *2 (N.D. Cal. Mar. 18, 2016).

20   **1.  The Class is Sufficiently Ascertainable**

21   "[A] class is ascertainable if the class is defined with objective criteria and if it is

22   administratively feasible to determine whether a particular individual member is a member of the

23   class." *Hyunh v. Harasz*, 2015 WL 7015567, at *13 (N.D. Cal. Nov. 12, 2015) (internal quotation

24   marks and citation omitted).

25   Here, the proposed class is sufficiently ascertainable based on objective criteria. The class

26   members are California  businesses who had in effect a Sentinel Spectrum Business Owner

27   Policy issued by Defendants during the proposed class period of April 1, 2020 to December 31,

28   2020. These are all readily verifiable and objective criteria to ascertain the class. Defendants'

**BERDING & WEIL LLP**
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

1    records will readily supply this information.

2          **2.   Common Questions Predominate Over Individual Questions**

3          The predominance inquiry under Rule 23(b)(3) tests whether a class is "sufficiently

4    cohesive to warrant adjudication by representation." *Amchem, supra,* 521 U.S. at 594. This

5    inquiry thus turns on "whether the common, aggregation-enabling, issues in the case are more

6    prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson*

7    *Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation and citation omitted). "When

8    one or more of the central issues in the action are common to the class and can be said to

9    predominate, the action may be considered proper under Rule 23(b)(3) even though other

10   important matters will have to be tried separately, such as damages or some affirmative defenses

11   peculiar to some individual class members." *Olean, supra,* 31 F.4th at 668 (internal quotations

12   and citation omitted); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998)

13   ("When common questions present a significant aspect of the case and they can be resolved for

14   all members of the class in a single adjudication, there is clear justification for handling the

15   dispute on a representative rather than on an individual basis.").

16         Furthermore, "Rule 23(b)(3) requires a showing that questions common to the class

17   predominate, not that those questions will be answered, on the merits, in favor of the class."

18   *Amgen*, *supra,* 568 U.S. at 459 (emphasis in original). Accordingly, "a district court cannot

19   decline certification merely because it considers plaintiffs' evidence relating to the common

20   questions to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof

21   on that issue." *Olean,* 31 F. 4th at 666. "If the plaintiffs present evidence that could sustain a

22   reasonable jury verdict on the merits of a common question as to all class members, a district

23   court may conclude that the plaintiffs have carried their burden under Rule 23(b)(3)." *Day, supra,*

24   2022 WL 16556802, at *8; citing *Olean, supra,* 31 F.4th at 667.

25         In this case, common issues dwarf any potential individual issues, which would not arise

26   until the distribution stage. Furthermore, the Spectrum policies issued to all putative class

27   members are pre-written and contain largely the same provisions and language. As explained

28   above, both the UCL and unjust enrichment/restitution claims involve common liability questions

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION                                3:20-cv-6789-EMC

that will drive the resolution of the litigation. (*See supra,* sec. IV. B. 2.) Both causes of action will be proven with common evidence, applicable to the class as a whole. (*See id.*) There will be few, if any, individualized issues, as each putative member challenges the same alleged conduct of Defendants with respect to the collection and retention of excessive premiums during the changed circumstances of the COVID-19 pandemic and the Defendants' failure to return any premium to Spectrum policyholders. *See, e.g., Feller v. Transamerica Life Ins. Co.,* No. 2:16-cv-01378-CAS, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017), at *12 ("The Court concludes that the inquiries will focus on Transamerica's conduct in increasing MDR's, and its basis for doing so—the analysis does not necessitate an inquiry into plaintiff's individual circumstances with respect to their individual policies."); *Arredondo v. Univ. of La Verne,* No. 22-CV-07665 MCS RAO, 2022 WL 1183561 at *4 (C.D. Cal. Feb. 8, 2022) (common issues predominate for class of students whose classes were moved from in-person to online during the COVID-19 pandemic); *In re PFA Ins. Mktg. Litig.,* 2021 WL 5994908, at *17 ("Because these questions [regarding the legality of the alleged scheme] are the most important in determining liability under the unfair prong of the UCL, these common questions would predominate over individual ones.").

Significant common issues are raised by the Defendants' approach to considering class members for potential premium relief. The Defendants reached conclusions with respect to the entire class that there had been no overstatement of risk and that there was no need for across-the-board premium relief. Because the Defendants put the onus on class members to request consideration for premium relief, and conducted audits for only the approximately 22,000 class members who actually contacted Sentinel, a central question regarding the unfairness of Defendants' business practices is the inadequacy of Defendants' notice to class members of their entitlement to request this consideration. Common evidence will show that Defendants' communications were purposely manipulative and deceptive, so that despite being designed to appear helpful, they actually discouraged policyholders from seeking audits, which effectively meant that policyholders would have had to somehow acquire the knowledge and independently discover that they were entitled to premium relief — a highly unlikely possibility. An important common question will therefore be whether Defendants' communications to class members

1   during the Covid period were deliberately intended to disincentivize, and thereby suppress,

2   requests for consideration for premium relief.

3       In addition to the common questions of law and fact, "Rule 23(b)(3)'s predominance

4   requirement takes into account damages." *Just Film, supra,* 847 F.3d at 1120. "Plaintiffs must

5   propose a damages model that is consistent with its theory of liability and capable of measuring

6   damages on a classwide basis." *Day, supra,* 2022 WL 16556802, at *9 citing *Comcast Corp. v.

7   Behrend*, 569 U.S. 27, 34-35 (2013). "Because damages often vary among class members, the

8   party seeking certification must develop a method for calculating damages on a class-wide basis

9   that is reasonably administrable and 'consistent with its liability case.'" *Castillo v. Johnson,* 853

10   F.App'x 125, 126 (9th Cir. 2021).

11       Here, the damages model set forth by Plaintiff's expert provides a common methodology

12   for calculating relief for each class member on a class-wide basis, using Defendants' records.

13   (Scourtis Decl. ¶¶35-43.) The losses suffered by each class member as a result of Defendants'

14   conduct will be quantified by Plaintiff's expert through a straightforward calculation, using

15   Defendants' standard business records. (Scourtis Decl. at ¶¶35-43.) While the amount of relief to

16   each class member will differ, the methodology will be uniform. *Castillo, supra,* 853 F.App'x at

17   126 (affirming class certification where "each class member's damages may easily be calculated

18   using simple arithmetic because the alleged increase in monthly rates applies class wide");

19   *Arnold v. State Farm Fire and Cas. Co.,* No. 2:17-cv-00148-TFM, 2020 WL 6879271 (S.D. Ala.

20   Nov. 23, 2020), at *9 ("Although the damages for every class member are unique and data

21   driven, they can be measured by a common arithmetic formula[.]").

22       Similarly, in *Day*, *supra*, 2022 WL 16556802, the plaintiff's expert proposed a method

23   for calculating damages on a class-wide basis utilizing a percentage refund applicable to all class

24   members. *Id*. at *9. The court in *Day* found that this methodology was sufficient, even where

25   plaintiff's expert had not yet chosen a specific appropriate percentage. *Id*. All that was required at

26   the class certification stage was to "present a likely method for determining class damages,… it is

27   not necessary to show that [the] method will work with certainty at this time." *Id*. (internal

28   quotation marks and citation omitted). Plaintiff's burden at class certification is not to prove its

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION                    3:20-cv-6789-EMC

case. Rather, at this stage, "a district court is limited to resolving whether the evidence establishes that a common question is capable of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean, supra,* 31 F.4th at 666–67. Plaintiff has done so here. *See, e.g., Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th Cir. 2013) (predominance met where "damages could feasibly and efficiently be calculated once the common liability questions are adjudicated"); *Torliatt, supra,* 2021 WL 5230755, at *9 ("[A]ll a plaintiff must do at class certification is present a 'likely method for determining class damages'").

Furthermore, the need to calculate damages for individual class members does not defeat predominance. *See Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."); *Leyva, supra,* 716 F.3d at 514 ("Thus, the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."); *Yokoyama v. Midland Nat. Life Ins. Co.,* 594 F.3d 1087, 1094 (9th Cir. 2010) ("In this circuit, however, damage calculations alone cannot defeat certification."); *see also Comcast Corp. v. Behrend,* 569 U.S. 27, 42 (2013) ("Recognition that individual damages calculations do not preclude certification under Rule 23(b)(3) is well-nigh universal.") (Ginsberg and Breyer, JJ., dissenting).

These common questions can be answered over a class-wide basis. The Bulletins required Defendants to calculate the appropriate premium relief. The premium relief can be provided on a uniform basis across the class as previously ordered by the DOI. The putative class members are all part of the same Spectrum Business Owner's commercial line of insurance. Sentinel itself calculates certain things by line, etc.

### 3.   A Class Action Is Superior to Individual Lawsuits

To satisfy Rule 23(b)(3) a plaintiff must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement is satisfied when "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem, supra,* 521 U.S. at 615. Relevant considerations include: "(A) the class members'

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION                                      3:20-cv-6789-EMC

1    interests in individually controlling the prosecution or defense of separate actions; (B) the extent

2    and nature of any litigation concerning the controversy already begun by or against class

3    members; (C) the desirability or undesirability of concentrating the litigation of the claims in the

4    particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. Rule

5    23(b)(3); *see Leyva, supra,* 716 F.3d at 514 (listing factors).

6         A class action is superior here, as any interest of class members in controlling the

7    prosecution of their individual claims is far outweighed by the efficiency in adjudicating the

8    claims as a class action. *See, e.g., Hanlon, supra,* 150 F.3d at 1023 (a class action is superior

9    where "the alternative methods of resolution are individual claims for a small amount[s]" that

10   would "prove uneconomic for potential plaintiffs"). Counsel are aware of no other litigation in

11   California that has already begun on behalf of any putative class member. Finally, as explained in

12   detail above, the claims of Plaintiff and the putative class members can be managed in a single

13   trial using common, class-wide proof, and with the same core of evidence establishing both

14   liability and restitution/damages. As such, there are no manageability issues.

15        Under prevailing Ninth Circuit law, the superiority inquiry should stop here, as "the plain

16   text of Rule 23(b)(3) requires the Court to determine whether a class action is 'superior to other

17   available methods for fairly and efficiently *adjudicating* the controversy,'" which the majority of

18   courts in the Ninth Circuit have interpreted to exclude non-adjudicative mechanisms such as

19   product recalls or refund programs. *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 672 (C.D. Cal. 2014)

20   (quoting Fed. R. Civ. Proc. 23(b)(3) (emphasis in case) (comprehensive refund program could

21   not be a superior *adjudication* method); *see also Martin v. Monsanto Co.*, No.

22   EDCV162168JFWSPX, 2017 WL 1115167, at *9 (C.D. Cal. Mar. 24, 2017) (same). Thus, the

23   proper inquiry involves only individual litigation. Even if the Court were to consider other

24   alternatives such as an administrative process, however, proceeding as a class action would still

25   prove superior to an administrative avenue. The Commissioner pointed out in the [DOI brief] that

26   the DOI welcomes private enforcement under the UCL as a [valuable augmentation] to DOI

27   actions. As the Commissioner explained to the California Supreme Court, "[t]he Department

28   regulates more than 1,400 insurance companies with over $310 billion in premium revenue. . . .

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION                                    3:20-cv-6789-EMC

1   Given the reality that the Department must budget its resources, private actions under the UCL

2   serve an important role to buttress the Department's enforcement efforts." Application and

3   Proposed Amicus Curiae Brief by California Department of Insurance in Support of Appellants,

4   in *Villanueva et al. v. Fidelity Nat'l Title Co.*, 2020 WL 1979401, at 23. The Commissioner also

5   pointed out that, where "there is less regulatory oversight . . ., a greater public participatory

6   oversight benefits consumers." *Id*. In the current circumstances, the DOI cannot feasibly oversee

7   the implementation of the required premium relief for all 1,400 insurers. Aware of this case and

8   companion cases proceeding in the federal courts, the DOI has not taken further action with

9   respect to overseeing premium relief for small commercial insureds. Thus, proceeding with

10  resolution of this case as a class action would clearly achieve economies of time, effort, and

11  expense, without sacrificing procedural fairness, in overseeing the relief the DOI called for in the

12  Bulletins."

13      **V.      <u>CONCLUSION</u>**

14          For the foregoing reasons, Plaintiff requests that this Court enter an Order: (1) Certifying

15  a class of "All persons and entities who paid insurance premiums to Defendants THE

16  HARTFORD FINANCIAL SERVICES GROUP, INC. and SENTINEL INSURANCE

17  COMPANY, LTD., for property and casualty insurance policies in California, covering any

18  period from April 1, 2020, through December 31, 2020" (ECF No. 28); (2) Appointing Named

19  Plaintiff REJOICE! COFFEE COMPANY, LLC as class representative; and (3) Appointing

20  BERDING & WEIL LLP and BIRKA-WHITE LAW OFFICES as class counsel.

21  Date: December 18, 2023                    BIRKA-WHITE LAW OFFICES

22                                             By:___*/s/ Laura A. Carrier*_____
                                                  Laura A. Carrier
23

24                                             David M. Birka-White, SBN 85721
                                               dbw@birka-white.com
25                                             Laura A. Carrier, SBN 220154
                                               lcarrier@birka-white.com
26                                             BIRKA-WHITE LAW OFFICES
                                               178 E. Prospect Avenue
27                                             Danville, CA 94526
                                               (925) 362-9999 (tel.) / (925) 362-9970 (fax)
28

-25-

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION                                    3:20-cv-6789-EMC

1

2                BERDING & WEIL LLP

3                By:   */s/ Fredrick A. Hagen*
                         Fredrick A. Hagen

4

5                Daniel L. Rottinghaus, SBN 131949
                drottinghaus@berdingweil.com

6                Fredrick A. Hagen, SBN 196220
                fhagen@berdingweil.com

7                Gordon A. Walters, SBN 272683
                gwalters@berdingweil.com

8                BERDING & WEIL LLP
                2175 N. California Blvd, Suite 500

9                Walnut Creek, California 94596
                925/838-2090 (tel.) / 925/820-5592 (fax)

10

11              Attorneys for Plaintiff
                Rejoice! Coffee Company, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BERDING & WEIL LLP
2175 N California Blvd  Suite 500
Walnut Creek, California 94596

PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR CLASS CERTIFICATION             3:20-cv-6789-EMC